IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                             Criminal Action No. 5:13-cr-19

BRIAN A. BEHRENS,

      Defendant.

## REPORT AND RECOMMENDATION DEFENDANT'S MOTION TO SUPPRESS

This matter comes before the Court on Defendant's Motion to Suppress filed on August 2, 2013,[1] and Defendant's Supplemental Motion to Suppress filed on August 19, 2013.[2] The Court held an evidentiary hearing and argument on Defendant's Motions to Suppress on August 20, 2013. Defendant appeared in person and by his counsel Brendan S. Leary, in person. The United States of America (hereinafter "the Government") appeared by Stephen L. Vogrin, in person. The Government presented the testimony of National Resources Police Officer Stephen Haines. Defendant presented the testimony of Investigator Russell Semplice and Defendant Brian Behrens. At the hearing, the Court admitted Exhibit one submitted by the Government, which is a photograph of Defendant's vehicle inspection sticker. The Court admitted the following exhibits submitted by Defendant: the criminal investigation report prepared by Officer Haines as Exhibit one; photographs of McCutcheon Road as Exhibits two, three, four, and five; a

---

[1] Dkt. No. 15.

[2] Dkt. No. 20.

1

photograph of a "Road Narrows" traffic sign on McCutcheon Road as Exhibit six; photographs of a recreation of where Defendant's car would have been in relation to NRPO Haines's vehicle at the time Defendant was pulled over as Exhibits seven, eight, nine, and fourteen; a photograph of a recreation of where Officer Haines's vehicle would have been just before he pulled Defendant over as Exhibit ten; and a photograph of the inside of Defendant's car as Exhibit fifteen. No other testimony was taken nor was any other evidence adduced.

## I. Introduction

A.  Background

On June 4, 2013, Defendant was named in a one count indictment that charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant now moves this Court to suppress evidence obtained in violation of the Fourth Amendment on the day of his arrest.

B.  The Motions

    1.  Motion to Suppress

    2.  Supplemental Motion to Suppress

C.  Recommendation

I recommend Defendant's Motion to Suppress Evidence be **DENIED** because the initial traffic stop was valid and the subsequent protective search of Defendant's car was justified by a reasonable suspicion Defendant was armed and potentially dangerous.

## II. Facts

On November 20, 2012, the second day of deer hunting season, Officer Haines was patrolling on McCutcheon Road, which is in a wooded area popular with deer hunters. At

approximately 5:00pm, Officer Haines, who was traveling northbound, came upon a vehicle stopped in the roadway, also facing northbound. Officer Haines observed Defendant, the driver of the vehicle, wearing camouflage clothing and looking out the driver's side window at several deer on a hillside. Suspecting that Defendant might be hunting from his vehicle, a crime under West Virginia law, Officer Haines stopped about 50 to 75 yards behind Defendant's vehicle. When another vehicle approached from the south, Defendant resumed traveling northbound on McCutcheon Road, and Officer Haines followed him. Officer Haines pulled close enough to Defendant's car to read the license plate number, and he called the plate number in to the Ohio County Sheriff's Office. The plate came back valid and registered to a female subject. Officer Haines continued to follow Defendant for approximately a half of a mile. Defendant, who noticed that a law enforcement vehicle was following him, became nervous because his vehicle had an expired inspection sticker,[3] so he made a sharp left turn onto the driveway of his family's former farm. As Defendant proceeded down the driveway, Officer Haines, who testified that he knew at this point that the inspection sticker was expired, activated his lights to stop Defendant's vehicle. Hr'g Tr. 12, 35.

    Defendant stopped his car and exited the vehicle. Officer Haines approached Defendant and asked Defendant if he had a problem with his inspection sticker, to which Defendant replied that he did. Exactly what happened next is in dispute. According to Officer Haines, he did not begin to search Defendant's vehicle until Defendant told him there was a loaded weapon in the car. Hr'g Tr. 14-16, 41-42. It is unclear whether Officer Haines asked Defendant if there was a

---

[3]The inspection sticker on Defendant's vehicle expired at the end of October 2012.

weapon in the vehicle before Defendant allegedly volunteered the information.[4] Defendant, on

the other hand, testified that he did not tell Officer Haines there was a weapon in the vehicle. He

---

[4]At the hearing, Officer Haines testified on direct examination as follows regarding his initial contact with Defendant:
> Q: So we're at the point now where you have the Dodge Intrepid stopped?
> A: Yes.
> Q: What did you do next?
> A: I made contact with the driver.
> Q: How did you do that?
> A: I walked up to the vehicle.
> Q: And where was the driver located?
> A: I can't remember if the driver exited the vehicle or was sitting in the vehicle at that point. I really don't recall.
> Q: And what conversation did you have with the driver at that point?
> A: I don't remember the first couple sentences, but it came about that there was a loaded...firearm in the vehicle, and at that point I wanted to secure that firearm as quickly as I could, for his safety and my safety.
> Q: Okay. Who told you that there was a loaded firearm in the vehicle?
> A: The driver of the vehicle, Mr. Behrens.
> Q: And how did you come about that discussion about a firearm or a weapon in the vehicle?
> A: I wondered if there was [sic] a weapon in the vehicle to begin with.

Hr'g Tr. 14. Later, on cross-examination, Officer Haines testified as follows:
> Q: So when you approached the vehicle, you opened up the back door and you went in and seized the weapon, true?
> A: I don't think I–I don't remember opening the back door. I just remember getting that weapon that was loaded.
> Q: Well, that's a key point here.
> A: Okay.
> Q: You said that he didn't give you consent. You just opened the door and seized it?
> A: Because it was loaded, he told me to be careful, there's a gun in there, it's loaded, and to me that's a potential risk.
> Q: He just offered, oh, there's a gun in there. That's your testimony?
> A: We did speak, and he indicated there was a gun inside the vehicle.
> Q: Did you ask him if there was a gun in the vehicle?
> A: I don't remember if I did or not.
> Q: And you're saying you didn't search until he advised you there was a weapon in the car. Is that your testimony?
> A: And that it was loaded and to be careful.
> Q: I'm a little confused. I'm not trying to be difficult, but I just want to make sure I understand. You're saying that you approached and he just offered there was a gun, or did you ask him if there was a weapon?
> A: I don't recall how it came about.
> Q: And you're saying that you didn't enter that vehicle until he told you it was there?
> A: Yes. Yes.

Hr'g Tr. 41-42.

4

stated that Officer Haines immediately asked whether there was a weapon in the car, but before Defendant could respond, Officer Haines opened the rear driver's side door and started searching through the car.[5] Defendant further testified that Officer Haines moved several items around within the car, and located the rifle underneath a pair of overalls. As Officer Haines started to pull the rifle towards the back of the car, Defendant testified that he told Officer Haines, "don't yank it that way...come take it from the front." According to Defendant, at that point, Officer Haines reentered the vehicle through the front driver's side door and seized the rifle. Hr'g Tr. 80-81, 86-87.

### III. Motion to Suppress Evidence

A. Contentions of the Parties

Defendant contends that the seized weapon should be excluded as fruit of the poisonous tree because both the initial traffic stop and the subsequent search of the vehicle were illegal. Specifically, he argues that the traffic stop was in violation of his Fourth Amendment rights because Officer Haines did not possess an articulable, reasonable suspicion the he had committed, was committing, or was about to commit a crime. Additionally, he argues that even if the stop itself were proper, Officer Haines's warrantless search of his vehicle exceeded the scope of an investigatory stop, and no search warrant exception applies.

The Government contends that, under the totality of the circumstances, Defendant's behavior on the night in question gave rise to a reasonable suspicion of unlawful activity, justifying the initial traffic stop. The Government further contends that the subsequent search of

---

[5]As discussed below, whether Defendant told Officer Haines about the weapon before he searched is irrelevant to the question of whether the protective search was justified because Officer Haines reasonably believed, based on Defendant's behavior, that Defendant was hunting from his car and was therefore armed.

5

Defendant's vehicle was justified based on Officer Haines's belief that there was a loaded firearm in the vehicle.

B.  Discussion

The first issue before this Court is whether the traffic stop in question was legally justified under the Fourth Amendment. An ordinary traffic stop constitutes a seizure of the person within the meaning of the Fourth Amendment, and is justified when an officer has either probable cause to believe a traffic violation has occurred, *Whren v. United States*, 517 U.S. 806, 809-10 (1996), or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Arvizu,* 534 U.S. 266, 274 (2002). The level of suspicion necessary to justify such a stop "falls considerably short of satisfying a preponderance of the evidence standard," *Arvizu,* 534 U.S. at 274, but the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S at 21. "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *Sokolow*, 490 U.S. at 7 (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)).

Here, Officer Haines testified that he pulled Defendant over, in part, because he believed there was an expired inspection sticker on Defendant's car, which is a violation of West Virginia law. (W. Va. Code §17C-16-9). Defendant maintains that it was not possible, under the circumstances, for Officer Haines to have seen the inspection sticker prior to initiating the traffic stop. However, Defendant's own testimony at the hearing clearly showed that Officer Haines believed the sticker was expired when he initiated the stop because Officer Haines's first action upon approach was to ask about the inspection sticker. Thus, it is undisputed that Officer Haines

6

had, at the least, a very strong suspicion the sticker was expired when he initiated the traffic stop. Accordingly, the initial traffic stop was valid.

This does not end the inquiry however because such a minor traffic violation cannot justify Officer Haines's immediate protective search of Defendant's vehicle. During a routine traffic stop, an officer may ask for a driver's license and vehicle registration, run a computer check, and issue the driver a citation, but "[a]ny further investigative detention...is beyond the scope of the Terry stop and, therefore, illegal unless the officer has a reasonable suspicion of other criminal activity or the individual consents to the further detention." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). However, "a police officer may conduct a protective search of the passenger compartment of a lawfully stopped automobile where the 'officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that [a] suspect is dangerous and the suspect may gain immediate control of weapons' within the vehicle." *United States v. Holmes*, 376 F.3d 270, 276 (4th Cir. 2004) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983)). While a suspect's conduct can escalate a routine traffic stop into a protective search for weapons, "a suspect's cooperation with police officers during a Terry stop does not, by itself, extinguish concerns that police may harbor about that suspect's dangerousness." *Holmes,* 376 F.3d at 278. "The Supreme Court has observed that, where an officer concludes that a suspect is armed, the suspect 'pose[s] a serious and present danger to the safety of the officer.'" *United States v. Griffin*, 589 F.3d 148 at 153 (4th Cir. 2009); *see, e.g. Long*, 463 U.S. at 1050-51 (holding that officers were justified in believing a driver posed a danger if allowed to reenter his vehicle after a traffic stop because officers observed a hunting knife in the car); *United States v. Baker*, 78 F.3d 135, 137 (4th Cir. 1996) ("Based on the inordinate risk of

danger to law enforcement officers during traffic stops, observing a bulge that could be made by a weapon in a suspect's clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation.").

Here, Officer Haines conceded that Defendant's conduct during the stop was non-threatening and compliant, but testified that he suspected there might be a weapon in the vehicle because he reasonably believed Defendant was hunting from his car. Defendant argues that Officer Haines had only an unsupported hunch that he was hunting from his car. At the most, he argues, Officer Haines simply saw a vehicle on the roadway, driven by a man wearing camouflage, with his window rolled down, which in West Virginia during deer hunting season is "noteworthy for being mundane, commonplace, and devoid of suspicion." Thus, in order to determine whether the protective search was lawful, this Court must decide whether Officer Haines had a reasonable suspicion, based on specific and articulable facts, that Defendant was hunting from his car.[6]

"The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect." *United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir. 1989); *see also United States v. Sokolow*, 490 U.S. 1, 9 (1989) (finding that a set of factors, each of which by itself may have an innocent explanation or appear innocuous to an untrained person, when taken together can amount to reasonable suspicion of criminal activity). Here, each of the articulated factors present on the evening in question must be examined to determine whether, collectively, they give rise to a reasonable suspicion that

---

[6]Although the traffic stop was valid based on the inspection sticker violation, it was also justified as an investigative stop if Officer Haines reasonably believed Defendant was illegally hunting from his car. However, because the validity of the protective search also turns on the reasonableness of Officers Haines's suspicion Defendant was hunting, this Court examines the issue only in the context of the protective search.

8

Defendant was hunting from his car, and was therefore armed.

First, Officer Haines knew from prior reports that people illegally hunted from their cars in the area he was patrolling. Additionally, Officer Haines observed Defendant's activities at approximately 5:00pm, which is a very popular time of day for hunting in that area because of the increased presence of wildlife at dusk. While Defendant's mere presence in such an area at such a time does not by itself give rise to a reasonable suspicion that he was hunting, they are both factors that may be considered. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.").

Officer Haines also observed Defendant, who was stopped in the road, wearing camouflage, and watching deer from his open driver's side window, drive away when another vehicle approached. Officer Haines testified that based on his experience and training, this behavior was indicative of someone hunting from his car. While Defendant argues that there was an innocent explanation for his behavior, namely that he had pulled off the road to let an oncoming car pass and the deer caught his eye, the relevant inquiry for a court evaluating whether reasonable suspicion exists is not whether a particular behavior is innocent or guilty, but rather what degree of suspicion attaches to the conduct. *See, e.g. United States v. Perkins*, 363 F.3d 317, 326 (4th Cir. 2004) ("The Supreme Court has consistently rejected the notion that courts can second-guess police officers by speculating on possible innocent reasons for a defendant's actions."); *United States v. McCoy*, 513 F.3d 205, 414 (4th Cir. 2008) ("[T]he reasonable suspicion determination demands that facts — whether seemingly innocent or obviously incriminating—be assessed in light of their effect on the respective officer's perception of the situation at hand.").

9

Finally, although Officer Haines admitted that he never saw Defendant actually handle a weapon or point a gun out of his window, the "Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972). To the contrary, "the very point of *Terry* was to permit officers to take preventive action and conduct investigative stops *before* crimes are committed, based on what they view as suspicious—albeit even legal—activity." *Perkins*, 363 F.3d at 326.

Based on the totality of the circumstances, this Court believes that Officer Haines had a reasonable suspicion, supported by specific and articuable facts, that Defendant was hunting, or preparing to hunt, from his car. Thus, Officer Haines was justified in believing Defendant was armed and potentially dangerous. Accordingly, the protective search of Defendant's car and seizure of the rifle were proper.

## IV. Recommendation

I recommend Defendant's Motion to Suppress Evidence be **<u>DENIED</u>** because the traffic stop was justified by Officer Haines's reasonable suspicion Defendant was driving with an expired inspection sticker and the protective search was reasonable in light of Officer Haines's belief that Defendant was hunting from his car and possibly had a weapon.

Any party who appears *pro se* and any counsel of record, as applicable, may, on or before **September 6, 2013**, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely

file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: September 3, 2013

/s/ James E. Seibert  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE