IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                             Criminal Action No. 5:13CR19
                                              (STAMP)

BRIAN A. BEHRENS,

      Defendant.


**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR A NEW TRIAL**
**AND MOTION FOR LEAVE TO INTERVIEW TRIAL JURORS**

## I.  Procedural History

The defendant, Brian A. Behrens, was named in a single-count indictment charging him with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The defendant proceeded to trial by jury and after two days was found guilty of the firearm offense.  The defendant then timely filed a motion for a new trial and a motion for leave to interview trial jurors.  The government filed responses to both motions.

## II.  Facts

The defendant claims that during post-trial investigations, he discovered that one of the jurors, Michael A. Snyder ("Juror Snyder"), Juror No. 11, failed to disclose information during the voir dire process that he knew, and at one time had a close relationship with, one of the witnesses.  Juror Snyder allegedly was best friends with the son of a key defense witness, Ms.

Danielle Keith ("Ms. Keith"). Ms. Keith is the current girlfriend of the defendant and has been, according to the defendant, an off-again-on-again girlfriend for twenty years.

Ms. Keith, however, was married when Juror Snyder knew her and her son, and went by the name Danielle McAbee at the time. Further, her son Wesley McAbee, who is now 21 years old, shares her married name. Ms. Keith told defense counsel that Juror Snyder would come to her home almost every day after school to play with Wesley. This friendship lasted about five years until Ms. Keith divorced her husband and moved with her children to Moundsville, West Virginia. The dates of the beginning and ending of this relationship and the date Ms. Keith divorced her husband are not indicated.

The defendant claims that, because Ms. Keith has been in a relationship with the defendant for almost twenty years and her son is 21 years old, Juror Snyder would probably have personal information and, therefore, a bias against the defendant because of the defendant's previous encounters with the legal system.[1] Additionally, the defendant avers that if Juror Snyder was aware of the defendant's past law enforcement encounters, he also may have information about the defendant's brother, Michael Behrens, who testified as a defense witness and whose testimony was "crucial to

_____

[1]The defendant candidly indicates that he had a misdemeanor conviction for domestic violence in 1999 and a conviction for being a prohibited person in possession of a firearm in 2005.

the defense's efforts . . . ." ECF No. 69 * 4. Michael Behrens has also had several encounters with the criminal legal system.

Further, the defendant asserts that because Juror Snyder did not disclose the relationship with Ms. Keith's son during voir dire, the defendant missed a chance to move to strike Juror Snyder for cause. Finally, the defendant claims that if Juror Snyder did not recognize Ms. Keith's name during voir dire when the witness list was read to the jury, he should have recognized her when she took the stand and at that point Juror Snyder should have revealed this information to the Court.

The government asserts that the defendant has failed to meet his burden of showing that a new trial or leave to interview trial jurors is necessary. The government contends that the defendant's assertions are merely speculative and do not rise to the level required for this Court to overrule the jury's guilty verdict. Further, the government argues that if Juror Snyder should have immediately recognized Ms. Keith so should Ms. Keith have immediately recognized Juror Snyder. Thus, Ms. Keith could have brought to this Court's attention (or at least to defendant and his counsel) the underlying relationship just as easily as Juror Snyder could have, if such an identification would have been instantaneous.

The parties have fully briefed this motion, and it is now ripe for the consideration of this Court. For the reasons that follow,

this Court must deny the defendant's motion for a new trial and motion for leave to interview trial jurors.

### III. Applicable Law

#### A. Motion for a New Trial

According to Federal Rule of Criminal Procedure 33(a), a court "may vacate any judgment and grant a new trial if the interest of justice so requires." A court, however, "should exercise its discretion to grant a new trial sparingly, and it should do so only when the evidence weighs heavily against the verdict." United States v. Chong Lam, 677 F.3d 190, 203 (4th Cir. 2012) (internal quotations and citations omitted). When deciding a motion under Rule 33, a court is not required to "view the evidence in the light most favorable to the government" and it "may evaluate the credibility of the witnesses" if necessary. United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985).

#### B. Motion for Leave to Interview Trial Jurors

Local Rule 47.01 directs that "[n]o party, or a party's agent or attorney, shall communicate or attempt to communicate with any member of the jury regarding the jury's deliberations or verdict without obtaining a court order allowing such communication." LR Gen. P. 47.01. These requests are highly disfavored, as reflected in Federal Rule of Evidence 606(b) which prohibits the interrogation of jurors except with regard to "whether extraneous prejudicial information was improperly brought to the jury's

attention or whether any outside influence was improperly brought to bear upon any juror."  See also United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988).

## IV.  Discussion

### A.  Motion for a New Trial

The defendant claims that a new trial is necessary because Juror Snyder's omission of his past relationship with Wesley McAbee and Ms. Keith probably caused Juror Snyder to be biased against the defendant.  This bias, the defendant avers, may have impermissibly affected Juror Snyder's consideration of the evidence in this case. Further, although "it is unclear" whether the information that Juror Snyder had was shared, it could have been shared with other jurors and caused those jurors to be biased against the defendant. ECF No. 69 *4.

"A juror is presumed impartial, and the existence of a preconception is insufficient to rebut the presumption if the juror can 'lay aside his impression or opinion and render a verdict based on the evidence presented in court.'"  United States v. Meredith, 92 F.3d 1183 (4th Cir. 1996) (citations omitted).  The United States Court of Appeals for the Fourth Circuit has adopted the Supreme Court's test for determining whether a new trial is required because of allegations of juror deceit.  In McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548 (1984), the Supreme Court set forth a two-part test that must be fulfilled by the

defendant. The defendant "must first demonstrate that a juror failed to answer honestly a material question . . . and then further show that a correct response would have provided a valid basis for a challenge for cause." Id. at 556. The Court noted that a "trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination." Id. at 555. Although it is unclear what Juror Snyder's motives were for not informing the Court of his relationship with Ms. Keith, "the test applies equally to deliberate concealment and to innocent non-disclosure." Jones v. Cooper, 311 F.3d 306, 310 (4th Cir. 2002).[2] Additionally, "the McDonough test is not the exclusive test for determining whether a new trial is warranted: a showing that a juror was actually biased, regardless of whether the juror was truthful or deceitful, can also entitle a defendant to a new trial." Id. (citation omitted). In this case, the defendant has not been able to fulfill the

_____

[2]See also Zerka v. Green, 49 F.3d 1181, 1185 (6th Cir. 1995); United States v. Langford, 990 F.2d 65, 68 (2d Cir. 1993); Artis v. Hitachi Zosen Clearing, Inc., 967 F.2d 1132, 1141–42 (7th Cir. 1992); Burton v. Johnson, 948 F.2d 1150, 1158 (10th Cir. 1991); United States v. St. Clair, 855 F.2d 518, 522–23 (8th Cir. 1988); United States v. Scott, 854 F.2d 697, 698 (5th Cir. 1988).

requirements of <u>McDonough</u> nor has he shown that Juror Snyder was actually biased.

    1.    *McDonough* Test

The defendant's allegations fall short of showing that Juror Snyder actually responded dishonestly to a material question during voir dire.  As the defendant concedes, Juror Snyder did not have a relationship with Ms. Keith when her last was name "Keith," but rather only would have known her as "Danielle McAbee." Additionally, he knew her son by the last name "McAbee."  Thus, Juror Snyder likely answered honestly when he answered affirmatively that he did not know anyone on the witness list during voir dire.  Further, the defendant has failed to lay out exactly when Juror Snyder knew Ms. Keith and had a friendship with her son.  It is therefore also unclear whether or not Juror Snyder would have recognized Ms. Keith when she took the stand. Accordingly, Juror Snyder may still have had no obligation to inform the Court of the relationship because he may not have known that he answered a voir dire question incorrectly.  Based on the information provided by the defendant, it is just as likely that Juror Snyder did not make any connection when Ms. Keith took the stand as it is that he did make a connection.

Second, although the defendant claims that it is likely he would have moved to strike Juror Snyder for cause if this information was disclosed during voir dire, this is not necessarily

correct. The relationship between Juror Snyder and Ms. Keith, although not discussed by the defendant, could have been a congenial relationship. Thus, the defendant may not have moved to strike but rather the government may have so moved. There are too many possibilities for such an assertion to stand by itself.

Additionally, the test is not whether or not the defendant would have moved to strike, but rather whether or not the relationship Ms. Keith and Juror Snyder had would have provided a valid basis for a challenge for cause. As the defendant attempts to make his argument, he often uses conditional and speculative words and phrases such as "probably," "likely," "may have," and "it is unclear." The usage of such terminology leaves this Court with evidence that is only based on supposition. It has not been shown, nor does the defendant have any evidence, that Juror Snyder was prejudiced or biased against the defendant because he once knew Ms. Keith or her son. The defendant has simply not shown that a valid basis for a challenge for cause existed even if Juror Snyder had informed the Court of his past contact with Ms. Keith and her son.

2.   Actual Bias

As stated above, even if a defendant cannot meet the requirements under McDonough, he may be able to establish that a new trial is required because the juror was actually biased. Jones at 310. The defendant, however, is also unable to show that Juror

8

Snyder was actually biased.  In Jones, the Fourth Circuit listed

three cases where allegations arose to the level of actual bias:

> In Williams, the juror lied about her relationship with
> a prosecution witness (the father of her children) and
> the fact that one of the prosecutors once represented her
> in a legal matter; her explanation for her
> misrepresentation was questionable; and the prosecutor
> also remained silent.  529 U.S. at 441-42, 120 S. Ct.
> 1479.  In Fullwood, the affidavit offered by the
> petitioner alleged that a juror was pressured by her
> husband to vote in favor of a death sentence, and that
> the pressure appeared to be effective.  290 F.3d at 676,
> 681.  In Colombo, the juror had "claim[ed] to know that
> a locale at which the evidence will place the defendant
> is a 'hang out for gangsters,' and . . . had deliberately
> responded falsely to a material question on voir dire
> precisely because she wanted to sit on the case," a
> circumstance in which, the Second Circuit stated, the
> juror "should be presumed not to be impartial."  United
> States v. Langford, 990 F.2d 65, 69 (2d Cir. 1993)
> (explaining the facts and holding of Colombo).

Jones v. Cooper, 311 F.3d 306, 313 (4th Cir. 2002).  The Court

noted that in Jones, a capital murder case where (1) the defendant

raised a defense of emotional disturbance because he was high on

illegal drugs and (2) the juror in question strongly supported the

death penalty and had a "vehement opposition" to illegal drug use

because of her family members' abuse of drugs, the "troubling

allegations presented in [the cases above] are not present . . . ."

Id. at 313-314.  That same analysis is applicable here.

The defendant has not shown that Juror Snyder knew that Ms.

Keith was previously Ms. McAbee, nor was it shown that the

prosecution knew about the relationship and failed to disclose it

as in Williams.  On that same line of reasoning, it is also unclear

why Ms. Keith herself did not alert the Court or the defendant to the relationship with Juror Snyder. Further, there is no evidence nor any allegations that Juror Snyder was pressured by anyone to vote in a certain way as in <u>Fullwood</u>. Finally, as indicated earlier, there is no evidence that Juror Snyder actually responded falsely during voir dire questioning as was the case in <u>Colombo</u>. Given the span of time that likely passed between when Juror Snyder and Wesley McAbee were friends,[3] and the fact that Ms. Keith now has a different last name, it is uncertain whether Juror Snyder even knew that Ms. Keith was the woman whose home he used to visit when her married name was McAbee. Additionally, it has not been shown by the defendant that Juror Snyder and Wesley McAbee ever discussed the defendant or his family. Thus, those allegations also would come up short in showing that Juror Snyder would have answered dishonestly during voir dire. Consequently, the defendant is also unable to show that Juror Snyder was actually biased.

### 3. Denial of Evidentiary Hearing

The defendant has asked that at a minimum, this Court should hold an evidentiary hearing and place Juror Snyder under oath if the Court is not willing to initially grant the motion for a new trial. This examination of Juror Snyder, the defendant asserts, would confirm the relationship between Juror Snyder and Ms. Keith

---

[3]Again, no exact dates were provided by the defendant so the Court is basing this on the implications of the evidence provided by the defendant.

and also allow the Court to ask him about any biases he holds against the defendant.

Although the Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias," Smith v. Phillips, 455 U.S. 209, 215(1982), this is not a steadfast rule that must be applied in every case. As the Fourth Circuit held in Billings:

> [A] court is [not] obliged to hold an evidentiary hearing any time that a defendant alleges juror bias, regardless of whether he utilized the pre-trial procedures available for ensuring the jury's impartiality. Otherwise, defendants would be able to sandbag the courts by accepting jurors onto the panel without exploring on voir dire their possible sources of bias and then, if their gambit failed and they were convicted, challenging their convictions by means of post-trial evidentiary hearings based on newly discovered evidence of possible juror bias.

Billings v. Polk, 441 F.3d 238, 245-46 (4th Cir. 2006). As this Court discussed above, it is just as likely in this case that Ms. Keith recognized Juror Snyder as it is that Juror Snyder recognized Ms. Keith. Thus, both Ms. Keith and Juror Snyder could have informed the Court of the past relationship and its possible implications. The policy set forth by the Billings court is applicable here because of that implication, allowing an evidentiary hearing whereby Juror Snyder would be examined by the Court would send a message that a defendant can wait until after a negative jury verdict to raise issues of juror bias. If the allegations that the defendant makes are true, and, as he asserts,

it would have been easy for Juror Snyder to recognize Ms. Keith, then it should have been equally as easy for Ms. Keith, who had an on-going relationship with the defendant, to recognize Juror Snyder. Accordingly, because of the speculative nature of the evidence offered by the defendant and the policy implications that allowing an evidentiary hearing would have, this Court also denies the defendant's request for an evidentiary hearing wherein an examination of Juror Snyder would take place.

B.    Motion for Leave to Interview Trial Jurors

The defendant has also requested leave to interview trial jurors so that he can determine whether Juror Snyder impermissibly discussed his relationship with Ms. Keith and Wesley McAbee. Further, the defendant contends that these interviews are needed so that he may determine whether the other jurors were influenced by that information in their deliberations.

Such a motion may be denied where a "threshold showing of improper outside influence" is not made. United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988) (citing Big John, B.V. v. Indian Head Grain Co., 718 F.2d 143, 150 (5th Cir. 1983)). Further, "in the absence of such a showing neither the sixth amendment nor Fed. Rule Evid. 606(b) requires an inquiry into possible external influence when a threshold showing of external influence has not been made." Id.

As stated above, the defendant has not made such a threshold showing of external influence. The defendant has only made speculative allegations as to what Juror Snyder knew and how he was affected by the possibility of knowing that information. It is unclear whether Juror Snyder recognized Ms. Keith, whether Juror Snyder had any information about the defendant or his family from any relationship he had with Ms. Keith and Wesley McAbee, or whether Ms. Keith recognized Juror Snyder during the trial and could have herself brought the issue to the attention of the Court. There is no evidence which would overcome the threshold requirement that would allow this Court to grant the motion for leave to interview trial jurors. Accordingly, this motion is denied.

## V. Conclusion

For the reasons stated above, the defendant's motion for a new trial (ECF No. 69) and the defendant's motion for leave to interview trial jurors (ECF No. 70) are hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED:     December 4, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE